DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    marissa.harris@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) NO. CR 16-CR-00518 BLF |
| | ) |
| Plaintiff, | ) UNITED STATES' SENTENCING |
| | ) MEMORANDUM |
| v. | ) |
| | ) Date: September 10, 2019 |
| DAMARI WILLIAM SINGLETON, | ) Time: 9:00 a.m. |
| | ) |
| Defendant. | ) |

Plaintiff United States of America, by and through its undersigned counsel, hereby submits its position regarding the sentencing of the defendant, Damari William Singleton. The government's position is based on its investigation, the Presentence Report ("PSR"), the files and records of this case, the victim impact statements submitted to date, a mitigation report disclosed by the defendant's counsel, and any arguments or testimony to be presented at the sentencing hearing. For the reasons detailed below, the government recommends a total sentence of 210 months of imprisonment, five years of supervised release, a $100 special assessment fee, and restitution as determined by the Court, which is sufficient, but not greater than necessary to meet the goals of sentencing expressed in 18 U.S.C. § 3553(a).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2016, Singleton was charged by Indictment with violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1591 (Sex Trafficking of Children), 18 U.S.C. § 2423 (Transportation of Minors for Prostitution), and 18 U.S.C. § 2422 (Coercion and Enticement). On January 22, 2019, Singleton pled guilty and was convicted of Count Two of the Indictment, Sex Trafficking of Children, in violation of 18 U.S.C. § 1591 (a) and (b). Sentencing is scheduled for September 10, 2019.

As stated in the PSR, from December of 2014 thorough early 2016, Singleton, along with various co-conspirators including Teyanna Michels, operated a prostitution business throughout the state of California, which sold the commercial sexual services of underage girls and adult women. Using primarily social media websites, Singleton repeatedly recruited girls and women from troubled homes with histories of sexual abuse, including Michels and minor girls R.O. and L.G. PSR ¶¶ 11-14; 16-17; 19; 29. Singleton and Michels arranged for the recruited women and girls to serve as prostitutes for his sex trafficking venture, transporting them throughout the state of California and across state borders to provide sexual services to adult customers. Specifically, Singleton and Michels corresponded with potential clients for the girls and women, posted advertisements for their sexual services on "backpage.com," transported them to and from their prostitution dates, and secured apartments, condominiums, and hotel rooms for use during the prostitution dates. PSR ¶¶ 16-17; 19; 22; 25-26. They also provided condoms and lubricant, set rates for specific services, and collected the profits made by the girls and women after their prostitution dates. *See id.* Sometimes the victims got to keep some of the money, but most of the time they did not.

Singleton used emotional and psychological manipulation and physical violence to control his victims and sustain his prostitution enterprise. Styling himself as a "Romeo pimp," he kept the girls compliant through false promises of love and romance, while isolating them from their families and support systems to make them dependent on him. He specifically targeted young women because of their impressionability and favored "out of town girls" because it was harder for them to escape. *See* PSR ¶ 24.

### R.O.

In January 2015, Singleton and Michels lured R.O. to travel from her home in Washington to California to serve as a prostitute for Singleton. R.O. was only 15 years old at the time and had already been a victimized by another sex trafficker in Washington. PSR ¶ 13. On Facebook, Michels told R.O.

they were "all family like love the shit out of each other AND we also share a common vision that's what makes us [s]o compatible." PSR ¶ 29. However, when R.O. was recovered by the San Jose Police Department on January 16, 2015, she was fearful and scared. *Id*. at ¶ 11. During her brief time in San Jose, she completed two dates where she had sex with adults for money. *Id*. at ¶ 12. Michels told her that she had to perform oral and vaginal sex with a condom and to use lubricant. Singleton set her rates. *Id*. at ¶ 17.

R.O. was returned to her mother in Washington, but Singleton lured her back to California in August 2015. When she arrived, he took away her cell phone, took control of her social media accounts, and refused to let her call her mother. *See id*. at ¶ 25. He made her feel special, taking her to get her hair and nails done and claimed that he was "risking his life" by being her pimp. *See id*. R.O. began to claim that Singleton was her boyfriend and that she loved him and wanted to marry him. *Id*. at ¶ 21; 23. In truth, Singleton ruthlessly exploited R.O. and was solely responsible for facilitating all of R.O.'s numerous prostitution dates at hotels throughout Santa Clara, San Diego, and Sacramento during this time. *Id*. at ¶ 25-26. Singleton posted all of the ads, rented all of the rooms, and took the vast majority of the money R.O. earned. R.O. later revealed Singleton's poor treatment of her. He called her "stupid," "bitch," and "whore" and slapped her repeatedly. She worked almost every day for about a month, earning Singleton thousands of dollars and engaging in more than 10 dates a day. *Id*. at ¶ 26. The situation ended around September 2015 when R.O. "couldn't do it anymore," and she "just left." R.O. stayed with various friends, ending up in Monterey. From there, she called her parents and told them she wanted to go home. Her father picked her up and drove her to his house in Los Angeles.

**<u>L.G.</u>**

L.G. ran away from her group home in September 2015 with another girl. She was 17 years old at the time. She was eventually connected with R.O. through friends. *Id*. at ¶ 19. R.O. introduced Singleton to L.G. as her boyfriend, claiming that she was 17 years old and from Washington. *Id*. at ¶ 21. However, Singleton later told L.G. that R.O. was only 15 years old, and that he would not let her go home because he did not want her to testify against her former trafficker in Washington. *Id*. L.G. attempted to persuade R.O. to leave with her several times, but R.O. was too scared to leave Singleton. *Id*. at ¶ 23.

Singleton routinely had sex with his girls without a condom, which was his choice not theirs. He transmitted chlamydia to both L.G. and R.O. as a result. *Id*. at ¶ 21. For example, during a trip to Sacramento, R.O. and L.G. slept in the same bed. During the middle of the night, Singleton laid down between them. L.G. told him she did not want him sleeping next to her, and he told her to "shut the fuck up." *Id*. They all went back to sleep, but then Singleton began touching L.G.'s leg and then began having sexual intercourse with L.G. *Id*. After she told him no, he told her that he "did not take no for an answer." No one had any dates in Sacramento. *Id*.

Next, Singleton drove R.O. and L.G. to the Embassy Suites in Santa Clara. The room was in the name of the mother of Singleton's child. *Id*. at ¶ 22. Singleton posted ads on "backpage.com" and R.O. began working at the Embassy Suites that day. SINGLETON drove L.G. to a separate hotel and forced her to have sexual intercourse. *Id*. The next morning, the two of them went back to the Embassy Suites. There, L.G. engaged in prostitution for three or four days, engaging in about 20 dates a day. *Id*. R.O. and L.G. put the money they earned into a drawer for Singleton. He kept all of their money. *Id*.

One morning, Singleton was late and L.G. wanted to leave, so she called her mother to come pick her up. *Id*. at ¶ 23. The San Jose Police retrieved L.G. and returned her to her group home. Unfortunately, she left with Singleton about a week later. Once in his car, she realized she did not want to be there. Singleton took her to one of his condos and forced her to have sex with him again. *Id*. L.G. left soon after. Although Singleton was never physically abusive with L.G., she believes he would have become violent with her had she stayed with him longer. Singleton repeatedly sexually assaulted her, called her a bitch, and told her she didn't mean anything to him.

**A.D.**

A.D., an adult, was recruited by Michels over Facebook in January 2015. *Id*. at ¶ 16. When she arrived in San Jose from Patterson, California, Singleton took away her phone and refused to let her contact her family or have her phone back. Michels set up both of A.D.'s dates. *Id*. A.D. did not get to keep any of the money she earned. *Id*.

**Teyanna Michels**

San Jose Police Department officers first encountered Teyanna Michels in January 2015, when they raided her apartment after an undercover officer made a prostitution date through a "backpage.com"

advertisement.  *Id*. at ¶¶ 8-10.  Michels was arrested once they identified R.O. as a missing juvenile from Washington.  *Id*. at ¶ 14.  She identified herself as Singleton's "bottom bitch," meaning a trusted prostitute with management, responsibilities for other prostitutes.  She indicated that Singleton was their pimp.  *Id*. Michels was recruited by Singleton through Facebook in approximately 2013.  She traveled to California from Nevada to work in Singleton's prostitution enterprise.   Singleton taught her "the game" and had her rent an apartment at River Oaks Circle in San Jose for the sole purpose of prostitution.  *Id*.  Singleton had Michels recruit other girls and women into his prostitution enterprise, including R.O. and A.D.  *Id*. Michels paid for R.O.'s plane ticket from Washington and managed her dates and advertisements once she arrived in San Jose.  *Id*. at ¶¶ 14; 17.

After she was released from custody, Michels returned to Singleton and continued to work for him until approximately March of 2015.  *Id*. at ¶ 24.  During this time, Singleton was violent towards her and hit, shoved, bit, and head butted her.   Michels also alleges that Singleton orchestrated a gang beating of Michels in October 2015 after one of his condos was raided by police searching for R.O. and L.G.—both missing juveniles at the time.  *Id*. at ¶ 27.

### **Singleton's Post Plea Attempts to Establish Another Prostitution Ring**

In approximately May of 2019, three months after Singleton pleaded guilty to sex trafficking of children, the government became aware of Singleton's intention to establish and operate another sex trafficking enterprise—this time through the assistance of his brother, Damien Walton, a/k/a "Scoot."  The government began collecting and reviewing Singleton's jail calls.

Beginning in February of 2019, Singleton claimed that he was "hollering at a lot of girls to come fuck with GG."  *See* April 29, 2019 Report of Investigation at 3.  Singleton was apparently recruiting young women straight from the jails and was planning to send them to his brother to work as prostitutes after they were released.  *Id*.  Singleton's plan was to pitch this as an adult entertainment and pornography business in Sacramento, with Walton free to "do whatever the fuck you want to do" after the women arrived.  *Id*.  *See also* PSR ¶ 33.

Singleton repeatedly emphasized the importance of picking up the women directly from jail so that they would not have any opportunity to escape, contact family, report to the authorities, or become involved with other men.  *See* July 30, 3019 Report of Investigation at 4.  For example, on July 3, 2019,

Singleton told his brother that he needed to have a calendar tracking the release dates of women recruited by Singleton because once they were out of his control they were gone.  He wanted them "straight from the gates, straight into my house."  August 13, 2019 Report of Investigation at 5; PSR ¶ 33.  He planned to recruit them using the same Romeo pimp tactics that he used for R.O. and Teyanna Michels—pursuing fake romantic relationships to earn their trust and then coercing them to work once they were released.  *See id*.  In fact, Singleton stated that "the number one thing" was to *not* mention "the game" to the women while they were in custody, but once the women were with Scoot it was "full court press…do whatever the fuck you wanna do."  *See* July 30, 3019 Report of Investigation at 5; PSR ¶ 33.

Singleton deliberately targeted young women between the ages of 18 and 25.  He sent public records requests to several sheriff's offices and detention facilities throughout California and Nevada, including Fresno County, Placer County, Sacramento County, and Washoe County in Nevada, seeking biographical information on female inmates aged 18 to 25, including their photographs, bail amounts, and projected release dates.  PSR ¶¶ 34-35; 37.  On a May 18, 2019 call, he emphasized that his prime targets were the most vulnerable: foster kids, former drug addicts, and women who had nowhere else to go.  *See id*. at 4-5; PSR ¶ 33.  In mid-June 2019, Singleton even pressured the mother of his child to prostitute for him while their four year old daughter was in daycare.  *See* August 13, 2019 Report of Investigation at 2-4; 6-9; PSR ¶ 36.  He wanted her to get experience so that she could inform him about the current trends and appetites of the Johns.  *See id*.

Singleton also recruited another woman, Iceis Alissa Galathe, a/k/a "Princess," to work as his new "bottom bitch" managing the women.  *See id*. at 4-5.  During several calls in early July 2019, he told Princess that he needed someone to "manage his shit," control his Instagram and "sprinkle my shit up and get me back relevant," and that he had a "whole fucking team" including "snows and Asians" and was "finna get an empire."  *See id*; PSR ¶ 36.

## II.   PRESENTENCE REPORT

The government has reviewed the PSR, prepared by United States Probation Officer Karen Mar.  The government agrees with the PSR's Sentencing Guideline calculation.  The government has no unresolved objections to the report's factual recitation and agrees with the supervised release terms recommended therein.

On August 27, 2019, the government produced additional reports detailing Singleton's most recent post plea conduct to probation and counsel. The government was subsequently notified that R.O.'s mother may attend the defendant's sentencing hearing to speak on her daughter's behalf, pursuant to 18 U.S.C. § 3771.

### III.    SENTENCING RECOMMENDATION

The Trafficking Victims Protection Act (18 U.S.C. §§ 1591 et seq.) is part of a comprehensive regulatory scheme that criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain.  Congress has recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery, and it is the largest manifestation of slavery today." *See United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015); 22 U.S.C. § 7101(b)(1).  In passing the Act, Congress further declared that "sexual slavery and trafficking of women and children are…abhorrent to the principles upon which the United States was founded." *Id*. at § 7101(b)(22).  The Supreme Court has long recognized that the prevention of sexual exploitation and abuse of children is a "government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982).  The government's sentencing recommendation reflects, first and foremost, the "surpassing importance" of its solemn obligation and prerogative to disrupt, dismantle, and deter all persons and organizations seeking to commercially profit from the sexual exploitation of children.

The government therefore recommends a sentence of 210 months of imprisonment, five years of supervised release, a $100 special assessment fee, and restitution in an amount to be set by the Court—a sentence at the low end of Singleton's guideline range.  The government has considered the nature and circumstances of these offenses, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. §§ 3553(a)(1)-(2).  The government's recommended sentence serves each of these goals.

Singleton stands convicted of sex trafficking of children, in violation of 18 U.S.C. § 1591(a) and (b)—one of the most serious offenses in the entire federal criminal code, with a mandatory minimum sentence of 10 years' imprisonment.  Singleton personally recruited several women and at least two minor

girls into his prostitution enterprise and exploited all of them.  He was the unquestioned leader, manager, and organizer of the prostitution enterprise and reaped the vast majority of the profits from the sexual labor of these victims.   As detailed above, Singleton manipulated and controlled the women and girls by isolating them from their families and social support systems, luring them into false romantic relationships to win their loyalty, fostering their dependence on him for basic necessities, and denigrating their dignity and agency through insults and violence.  He prevented R.O. from testifying as a victim in her own sex trafficking case.  He sexually assaulted L.G. at least twice.   He arranged an attack on Teyanna Michels and coldly watched as she was beaten up by other women.  Taken in totality, Singleton's appalling conduct merits a forceful sanction from this Court.

Singleton has a history of violence against women.  In 2016, prior to his indictment in this case, he was convicted of Inflicting Corporal Injury on a Spouse (Cal. Penal Code § 273.5(a)), Witness Intimidation (Cal. Penal Code § 136.1(a)), and False Imprisonment (Cal. Penal Code § 236/237) arising from a 2014 attack on his ex-girlfriend, where he punched her in the head several times, choked her, and bit her.  PSR ¶ 58.  He then drove her to a bank and threatened to shoot at her home and her mother's home unless she emptied her bank account for him.  *Id*.  He was sentenced to 32 months in prison in November 2016 and before being transferred into federal custody to face charges in this case.

Singleton continues to exploit women.  The contents of his recent recorded jail calls, made *after* he was convicted of sex trafficking of children, reveal a truly audacious and shocking willingness to resume the same exploitative conduct that resulted in his federal conviction, albeit with adults and not minors.  Singleton's statements reveal his extreme sense of entitlement to the sexual attentions and labor of these women and total lack of empathy for the consequences of sexual trauma on their lives and wellbeing.  He deliberately sought out vulnerable victims: foster kids, former drug addicts, and women who had nowhere else to go.   He once again planned to make these young women dependent on him—recruiting them while they in custody with false promises of romance and instructing his brother to pick them up directly from the jail before they had any chance to escape his influence.  He claimed that his "empire" would be focused on legal pornography and adult entertainment, but outright encouraged his brother to prostitute the women once they were under his control.  Moreover, he pressured the mother of his child to prostitute herself for his benefit while their daughter was in daycare.  This conduct is

1  inconsistent with a true acceptance of responsibility or even a basic acknowledgment of the wrongfulness
2  of sexual exploitation and its traumatic effects on victims.

3         The government acknowledges with sympathy Singleton's history of poverty, violence, and
4  alleged sexual molestation as a child.  PSR ¶¶ 84-88.  The government does not seek to minimize the
5  impact of these personal traumas on Singleton's quality of life and has requested a sentence at the low end
6  of his guidelines range because of them.  But these past traumas do not and cannot excuse his deliberate,
7  willful, and continuing sexual exploitation of women and children.  Past traumas do not grant a license to
8  traumatize others.   As his post-plea conduct makes clear, Singleton still does not appreciate the
9  wrongfulness of sexual exploitation and is utterly underserving of any variance from his guidelines range.

10        Accordingly, the government recommends a total sentence of 210 months of imprisonment, five
11  years of supervised release, a $100 special assessment fee, and restitution in an amount to be set by the
12  Court.  This sentence reflects the seriousness of these offenses, promotes respect for the law, provides
13  just punishment for the offenses committed, and acts as a deterrent to any future criminal conduct,
14  especially conduct involving the sexual exploitation of children.  Most importantly, the government
15  believes that this sentence affords Singleton the necessary time for careful self-reflection and treatment
16  to rehabilitate his attitudes towards women and girls so that he can truly see them as more than
17  instruments for his personal enrichment and rejoin society without exploiting others.

18         **IV.   <u>CONCLUSION</u>**

19        For the reasons set forth above, the government recommends that the Court impose a total sentence
20  of 210 months of imprisonment, five years of supervised release, a $100 special assessment fee, and
21  restitution in an amount to be set by the Court.  The government believes that this sentence is reasonable
22  and sufficient, but not greater than necessary, to achieve the goals of sentencing and provides justice and
23  closure to Singleton's many victims.

24                                                     Respectfully submitted,

25                                                     DAVID L. ANDERSON
26                                                     United States Attorney

27  Dated: September 3, 2019                           _____/s/_____
28                                                     MARISSA HARRIS
                                                       Assistant United States Attorney